2019 IL App (1st) 162985

SIXTH DIVISION
May 10, 2019

No. 1-16-2985

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04 CH 19905 |
| RODERICK ALLEN, | ) ) | Honorable Arthur F. Hill Jr., |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE DELORT delivered the judgment of the court, with opinion.
Justices Cunningham and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    This case involves the difficult question of how the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) can fairly be applied to individuals who, due to mental illness, are incapable of making a *pro se* showing of an arguably meritorious claim at the first stage of the postconviction process. Petitioner, Roderick Allen, appeals an order of the circuit court of Cook County, denying leave to file his third successive *pro se* petition. The State Appellate Defender argues on his behalf that the Act is unconstitutional as applied to him because his mental illness renders him incapable of meeting the threshold burden of showing an

arguably meritorious claim.[1] Because that issue was not raised in the petition at the circuit court level, we are compelled to find that it cannot be raised in this appeal.

¶ 2                                      I. BACKGROUND

¶ 3      The record of petitioner's trial is set forth fully in this court's opinion on direct appeal. *People v. Allen*, 401 Ill. App. 3d 840 (2010). Additionally, the record of his first postconviction proceedings is set forth fully in this court's Rule 23 order on appeal from the dismissal of his first petition for relief under the Act. *People v. Allen*, 2013 IL App (1st) 110747-U. Therefore, we recite only those facts that are relevant to this appeal.

¶ 4      Petitioner was convicted of home invasion and the first degree murder of his sister, Debbie Whitebear. On August 7, 2004, he entered the home of his mother, Frances Allen, and stabbed his sister several times in the chest, killing her. Petitioner's theory of the case—which he maintained throughout pretrial, trial, and posttrial proceedings—was that he killed his sister to protect their elderly mother from her abuse. The abuse, he believed, was part of an ongoing scheme by his siblings to hide from him the existence of a real estate trust to which he was the beneficiary. Petitioner maintained that this secret trust held the property of a man named Carl Lewis, whom petitioner believed was his real father. Petitioner posited that the man who raised him, Claude W. Allen Jr., was not his real father, but was, in fact, a serial killer who was responsible for the disappearance of numerous missing persons.

¶ 5      Before trial, the circuit court appointed a public defender to represent petitioner. Before long, however, petitioner filed a *pro se* "Motion for Withdrawal of the Public Defender," in which he argued that the public defender was "in direct collusion with the Assistant State's Attorney." He also claimed that, in a prior drug-related criminal case, a different assistant state's

---

[1]The state appellate defender acknowledges that petitioner does not agree that he is delusional or mentally ill. Consequently, we abandon the convention of attributing counsel's arguments to the petitioner himself.

attorney had colluded with a different Cook County circuit court judge to "turn[ ] their backs on the documented exploits of a serial child killer, one Claude W. Allen, Jr. *** and proceeded to maliciously prosecute the then and now defendant, Roderick T. Allen, in order to facilitate Claude Allen's efforts to cheat Roderick Allen of an inheritance."

¶ 6     Over the course of the protracted pretrial proceedings, petitioner was examined by four psychologists and psychiatrists. At a fitness hearing, three of those doctors testified that petitioner was not fit to stand trial because he suffered from a psychotic delusional disorder. Their conclusions were informed by their review of numerous *pro se* motions that petitioner had filed, in which he alleged or implied that his appointed counsel, at least one Chicago police officer, the Ku Klux Klan, and "delivery truck drivers of the *Chicago Tribune* Newspaper" were all involved in a string of disappearances in the Chicago area. Petitioner's delusions also included his belief that his surviving sister, his counsel, the judge, and the prosecutor were colluding to prevent him from receiving an inheritance. Petitioner contended that he was fit for trial, and one doctor testified that he agreed. The jury found petitioner unfit to stand trial and determined that he could be restored to fitness within a year with treatment. He was remanded to the Department of Human Services Division of Mental Health and remained at the Chester Mental Health Center, where he was treated without medication.

¶ 7     After six months of treatment, the court found that petitioner had been restored to fitness and therefore was fit for trial. Shortly thereafter, petitioner again peppered the court with *pro se* motions, including a motion to proceed *pro se*. The court advised petitioner that he would be held to the same standards as an attorney, to which petitioner replied he understood. The court then discharged petitioner's attorney.

¶ 8    Petitioner's additional *pro se* motions alleged, among other things, that the transcript of his fitness hearing had been falsified and that the State was withholding evidence regarding the missing persons investigations. He moved for the appointment of an expert to investigate whether wounds to the victim's hands had been "inflicted [some time after petitioner stabbed the victim] to imitate defensive wounds," whether one of the three wounds to the victim's chest was inflicted by some unidentified party after petitioner had already stabbed her twice, whether a certain bloody shirt had been planted on the decedent, and whether "specimens were taken from the decedent's rectum and vagina to determine if canine semen was present."

¶ 9    In May, 2007, the circuit court stated:

"I have some concerns about what's going on here in terms of what it is that you are doing and how you are proceeding and your perception about our proceedings here and so I have a *bona fide* doubt once again about whether or not you are fit to stand trial."

One of the doctors who testified at the fitness hearing examined petitioner once again and found him to be fit.

¶ 10    Petitioner's case was reassigned for trial in November 2007. The court reviewed the waiver of counsel with petitioner and confirmed that he still wanted to represent himself.

¶ 11    At trial, the evidence showed that petitioner rushed into his mother's home as she was returning from the grocery store with her caregiver and stabbed his sister in the heart. Petitioner did not dispute those basic facts. However, he did argue that the autopsy photographs were not authentic. Among the State's witnesses was petitioner's mother's neighbor, Kenneth Brooks. Brooks testified that he alerted another neighbor, who happened to be a police officer, that he heard a woman screaming for help.

4

¶ 12    When the State rested, petitioner sought to recall his surviving sister, Paula Powers, to question her about his mother's guardianship proceedings, the theft of his inheritance, and how Whitebear sought revenge against their mother for telling him about the stolen inheritance. The court denied the request, finding those issues irrelevant.

¶ 13    Petitioner then testified on his own behalf. He admitted to stabbing Whitebear twice but speculated that a police officer who came on the scene later inflicted a third stab wound. He stated that he stabbed his sister in order to protect their mother from Whitebear's ongoing abuse. He claimed that Whitebear forced their mother to engage in acts of bestiality with her dog and fed her substances that were not fit for human consumption. He admitted that his mother had not told him about any abuse but that he could tell by the look on her face and the way she leaned on him when he helped her up the stairs on the day of the murder.

¶ 14    The court denied petitioner's request for jury instructions on self-defense and second degree murder. The court also rejected several other proposed instructions. The jury found petitioner guilty of first degree murder and home invasion.

¶ 15    Petitioner filed posttrial motions reiterating his claims about the allegedly stolen inheritance and the authenticity of the autopsy photographs. In ruling on these motions, the court stated, "there is no doubt in my mind that this defendant absolutely believed in his mind, he believed [his] mother was in danger. That belief was totally unreasonable." The court further commented, "The defendant for the last three and a half years or so has believed that he had justification for taking his sister's life." The court denied the motions.

¶ 16    At sentencing, petitioner maintained that his sisters had conspired to get him into legal trouble and that the whole proceedings were "all about being defrauded" of his inheritance. The

court sentenced him to 60 years' imprisonment for the murder and a consecutive term of 25 years for home invasion.

¶ 17    On direct appeal, petitioner was represented by the Office of the State Appellate Defender. He argued, among other things, that he was not mentally competent to represent himself *pro se* pursuant to *Indiana v. Edwards*, 554 U.S. 164 (2008), and that his waiver of trial counsel was invalid. *Allen*, 401 Ill. App. 3d at 842. This court affirmed the judgment of the circuit court. *Id.* at 857. Petitioner petitioned the Illinois Supreme Court for leave to appeal, which that court denied on September 29, 2010. *People v. Allen*, 237 Ill. 2d 562 (2010) (table). The United States Supreme Court denied petitioner's request for a writ of *certiorari*. *Allen v. Illinois*, 563 U.S. 1034 (2011) (table).

¶ 18    In petitioner's first *pro se* petition for relief under the Act, he alleged that (1) he was denied the right to a speedy trial due to the fitness proceedings, (2) the trial court erred in denying his request for an investigator and expert testimony regarding the stab wounds and the falsified autopsy photographs, (3) the circuit court erred in admitting the falsified photographs, (4) the forensic pathologist perjured herself regarding the autopsy photographs, (5) appellate counsel was ineffective for not raising an issue regarding the denial of self-defense and second degree murder jury instructions based on his allegation that his sister had poisoned their mother and forced her to engage in acts of bestiality with a dog, and (6) the circuit court erred when it refused a request for standby counsel. In support of these claims, petitioner alleged that the trial transcripts had been falsified in no fewer than 100 specified places. The circuit court summarily dismissed that petition, and we affirmed. *People v. Allen*, 2013 IL App (1st) 110747-U, ¶ 48.

¶ 19    Petitioner filed a number of *pro se* motions with this court during the pendency of that appeal. Among other things, he asserted that the correctional center staff had given him "a

contaminated tuberculosis skin test injection" and that he had filed a grievance against a doctor "for cultivating bacteria in an effort to simulate a tooth infection." He moved this court to "supplement the record on appeal" by incorporating dozens of his alleged "corrections" to the transcripts. He also sought discovery related to whether the circuit court judge who presided over his mother's guardianship proceedings was aware of the usurped inheritance.

¶ 20    He then filed an "amendment" to his first postconviction petition. The circuit court treated it as a motion for leave to file a successive petition and denied it. The circuit court found that all but two of the claims were barred by *res judicata* and that those two failed on their merits under the cause and prejudice test. In denying petitioner's claim based on falsification of the transcripts, the circuit court called the claim "absurd" and requiring "an advanced leap of the imagination."

¶ 21    On December 13, 2013, petitioner sought leave to file another amended postconviction petition. Although many claims were merely reiterations of those made before, he also added a claim that the person who testified at trial as his mother's neighbor, "Kenneth Brooks," was an imposter. He claimed that he had met the real Brooks before, and the man who testified was not him. The circuit court denied leave to file the petition, finding that most of the claims were barred by *res judicata*. And, although the claims about Brooks were not barred, the court found that they were not supported by the record and "patently fanciful." The circuit court observed that petitioner was "still misguided by his faulty understanding of the concept of self defense," which led him to raise claims that could not possibly bring him any relief.

¶ 22    On appeal from that order, petitioner moved this court *not* to appoint counsel for him. We denied that request on the grounds that his previous *pro se* filings with this court were so voluminous and, often, inappropriate that his objections were overridden by our right, and the

State's right, to have the issues presented in an orderly fashion. We noted that a criminal defendant has no federal constitutional right to proceed *pro se* at the appellate level. See *Martinez v. Court of Appeal*, 528 U.S. 152, 163 (2000). The Office of the State Appellate Defender determined that there were no issues of arguable merit and moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). We granted that motion and affirmed. *People v. Allen*, 2015 IL App (1st) 140803-U, ¶ 11.

¶ 23   On November 9, 2015, petitioner filed his third successive postconviction petition. Together with several amendments and other motions, this petition is the subject of the current appeal. Petitioner alleged that appointed appellate counsel on his second successive postconviction petition rendered ineffective assistance for not raising the following issues: (1) ineffective assistance of trial counsel at the fitness hearing, (2) denial of access to recorded conversations with his mother, (3) use of a fraudulent autopsy photograph at trial, (4) use of a fraudulent photograph depicting a white T-shirt at the crime scene, (5) cumulative error resulting from the use of fraudulent photographs at trial, (6) violation of his right to a speedy trial, (7) error in the denial of his request for an investigator and expert witness, (8) error in the denial of his motions for discovery and subpoena requests, (9) error in the denial of requested self-defense jury instructions, and (10) error in the denial of standby counsel.

¶ 24   On January 20, 2016, petitioner moved the circuit court to appoint an expert to compare the transcripts of the trial proceedings to the stenographic notes. He opined that such expert examination would reveal numerous falsifications, particularly with respect to the autopsy photographs and a number of "missing" comments by the State.

¶ 25   On January 26, 2016, petitioner filed a petition to supplement his petition. The supplement alleged new claims of ineffective assistance of appellate counsel. He alleged that his

appellate counsel rendered ineffective assistance by (1) failing to identify a published Illinois court decision stating that mere words and gestures could be sufficient to give rise to a reasonable belief that harm was imminent, (2) failing to acquire and supplement the record with affidavits from the fitness evaluators answering questions about whether they had received money in exchange for finding that petitioner was not fit for trial, (3) failing to raise an issue as to the falsification of transcripts, and (4) failing to supplement the record with a memorandum of law that petitioner had filed with his first postconviction petition.

¶ 26    The circuit court denied leave to file the third successive petition, along with the supplement. The court found that petitioner had not established any prejudice from the alleged failures of his appellate counsel. The court found that the bulk of the claims were barred by the doctrine of *res judicata*. As to the allegation that appellate counsel failed to provide a specific case citation and failed to obtain affidavits about his sister paying fitness evaluators, the court found that the allegations were "[n]on-factual and non-specific assertions *** insufficient to require a hearing under the Act." The court also denied the motion for expert assistance in reviewing the transcripts. On December 1, 2016, this court granted petitioner leave to file a late notice of appeal from the circuit court's order denying his motion for expert assistance and denying him leave to file is third successive petition. This appeal follows.

¶ 27                                    II. ANALYSIS

¶ 28    The primary issue in this appeal is whether petitioner is so mentally ill that he is incapable of advancing past the first stage of postconviction proceedings without the assistance of counsel. If so, we must determine the appropriate remedy.

¶ 29    "The Post-Conviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially

violated in his original trial or sentencing hearing." *People v. Davis*, 2014 IL 115595, ¶ 13. The Act allows inquiry into constitutional issues arising in the original proceeding which have not been raised and could not have been adjudicated on direct appeal. *Id.* Therefore, issues that could have been raised on direct appeal are forfeited. *Id.* The Act contemplates the filing of only one petition without leave of court (725 ILCS 5/122-1(f) (West 2016)), and "any claim not presented in an original or amended petition is waived." *People v. Sanders*, 2016 IL 118123, ¶ 24; see also *People v. Evans*, 186 Ill. 2d 83, 91-92 (1999) (the judgment of the reviewing court on a previous appeal is *res judicata* as to the issues actually decided, and any claim that could have been presented in the direct appeal is, if not raised, thereafter barred under the doctrine of waiver).

¶ 30    Proceedings under the Act are divided into three stages. *People v. Pendleton*, 223 Ill. 2d 458, 472 (2006). "At the first stage, the circuit court must, within 90 days of the petition's filing, independently review the petition, taking the allegations as true, and determine whether 'the petition is frivolous or is patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting *People v. Edwards*, 197 Ill. 2d 239, 244 (2001)); 725 ILCS 5/122-2.1(a)(2) (West 2016). A petition is frivolous or patently without merit "only if the petition has no arguable basis *** in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. A petition lacks an arguable basis in law or fact if it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. A legal theory is "indisputably meritless" if it is "completely contradicted by the record," and a factual allegation is "fanciful" if it is "fantastic or delusional." *Id.* at 16-17.

¶ 31    "[T]he court shall appoint counsel" if the proceedings advance to the second stage and the petitioner so requests. 725 ILCS 5/122-4 (West 2016). It is only through legislative grace that petitioners have this limited right to counsel in postconviction proceedings. *People v. Porter*, 122 Ill. 2d 64, 72 (1988) (citing *People v. Ward*, 124 Ill. App. 3d 974, 978 (1984)).

¶ 32    The court may grant leave to file a successive postconviction petition when a defendant demonstrates cause for failing to raise the claim in his earlier petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2016). "Cause" is established when the defendant shows that "some objective factor external to the defense impeded his ability to raise the claim" in his original postconviction proceeding. *People v. Tenner*, 206 Ill. 2d 381, 393 (2002). "Prejudice" is established when the defendant shows that the "claimed constitutional error so infected his trial that the resulting conviction violated due process." *Id.* A defendant must establish both cause and prejudice. *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002). "[T]he cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard." *People v. Smith*, 2014 IL 115946, ¶ 35. A circuit court should deny a defendant leave to file a successive postconviction petition when it is clear, based upon a review of the successive petition and the attached documentation, that the defendant's claims fail as a matter of law or when the petition and its supporting documents are insufficient to justify further proceedings. *Id.* We review the denial of a defendant's motion for leave to file a successive postconviction petition *de novo*. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 33    The State Appellate Defender does not argue that petitioner stated a potentially meritorious constitutional claim in his most recent petition. Rather, the appellate defender abandons all of petitioner's claims of error and takes the position that petitioner is so mentally ill that he is incapable of making a *pro se* showing of an arguably meritorious claim. The State Appellate Defender argues that petitioner is caught in a classic Catch-22.[2] Assuming, *arguendo*,

_____

[2]In the novel, an army airman could not be required to fly combat missions unless he was mentally fit. Joseph Heller, Catch-22, at 47 (6th ed. 1976). However, the very act of requesting to be taken off of active duty was considered irrefutable evidence of mental fitness. *Id.* Consequently, no mentally ill pilot could ever effectively argue his own lack of fitness.

that petitioner has valid, nonfrivolous claims related to his mental illness, those claims will never be heard precisely because of his mental illness. The State Appellate Defender argues that, because petitioner does not acknowledge his illness and because he harbors prosecutory and paranoid delusions, he is incapable of raising any issues that are not "fantastic or delusional." Unable to meet the threshold requirement of stating even the gist of a valid claim, petitioner cannot receive the appointed counsel that he needs to present his potentially valid claims. As a result, the State Appellate Defender argues, petitioner is effectively denied meaningful access to the courts, and the Act is unconstitutional as applied to him.

¶ 34    In particular, the State Appellate Defender points out that all of petitioner's pretrial, trial, posttrial, and appellate *pro se* filings have been marked by petitioner's delusional theories. The original delusions were about his siblings stealing an inheritance from his "real" father, the alleged murder spree of Claude Allen Jr. and *Chicago Tribune* delivery drivers causing multiple disappearances throughout Chicago. As the proceedings evolved, petitioner's delusions expanded to include the belief that police officers, lawyers, and judges involved in his case were part of a conspiracy to cover-up the inheritance and the killings and to pin some of the killings on petitioner himself. By the time of trial, and throughout postconviction proceedings, petitioner maintained that the conspiracy involved the police inflicting additional wounds on Whitebear after he stabbed her, falsifying autopsy photographs and transcripts, planting a bloody shirt at the crime scene, and inducing an imposter to testify as Kenneth Brooks.

¶ 35    The State Appellate Defender argues persuasively that petitioner's mental illness prevents him from presenting any arguably meritorious claims at the first stage of postconviction proceedings. He appears to be so fixated on his delusional beliefs that he is unable to raise any issue that is not, as the circuit court observed, "fanciful." The fact that petitioner is able to

articulate a constitutional violation is not enough; he must state a *nondelusional* constitutional violation. And the voluminous record indicates that he simply cannot.

¶ 36    Unable to advance to the second stage, petitioner is unable to receive the legal assistance that he would need to present any potentially valid claims that he has. The State Appellate Defender argues that we should find that the Act is unconstitutional as applied to petitioner because its application effectively denies him due process of law. Then we should we reverse the order denying petitioner leave to file his third successive postconviction petition and remand with instructions to appoint counsel to assess whether petitioner has any potentially meritorious claims.

¶ 37    Even if we were to agree that petitioner's mental illness prevents him from advancing past the first stage of postconviction proceedings,[3] we are unable to grant the requested relief; the as-applied constitutional challenge has been waived. The Act specifically provides that any claim not presented in an original or amended petition is waived. 725 ILCS 5/122-3 (West 2016). Waiver is unlike other procedural bars, which the judiciary may excuse.[4] *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002). Our supreme court has stressed, in no uncertain terms, that *this* court does not have the supervisory authority to overlook the waiver of claims under the Act. See *People v. Jones*, 213 Ill. 2d 498, 508 (2004) ("Our detailed discussion of this issue is intended to

---

[3]Although we do not reach this issue because it is waived, it is worth noting that we could make such a finding without repudiating our decision on direct appeal. On direct appeal, we held that the circuit court did not abuse its discretion by allowing petitioner to represent himself at trial. *Allen*, 401 Ill. App. 3d at 852. The precise issue before us at that time was not petitioner's mental fitness, but the circuit court's decision based on the knowledge available to it at the time. See *id.* at 853 ("The trial judge conducted the matter appropriately based on the information before the court."). We now have a much more complete record before us than was before the circuit court at the time of that decision, including the entire trial and posttrial proceedings to date.

[4]The State also argues that the issue is forfeited because it was not raised on direct appeal or before the circuit court. However, the procedural bars of *res judicata* and forfeiture may be relaxed "where fundamental fairness so requires; where the alleged forfeiture stems from the incompetence of appellate counsel; or where facts relating to the claim do not appear on the face of the original appellate record." *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005). Because the issue has been waived, we do not reach the question of whether fundamental fairness would require us to overlook petitioner's forfeiture.

stress that our appellate court is not free, as this court is under its supervisory authority, to excuse, in the context of postconviction proceedings, an appellate waiver caused by the failure of a defendant to include issues in his or her postconviction petition."). So although fundamental fairness may appear to be on the side of reversing and remanding this case with instructions to appoint counsel to review petitioner's potential claims, it is beyond our power to grant that relief.

¶ 38    As to the claims that were actually raised in the petition, the state appellate defender makes no substantive argument. Indeed, a crucial element of the argument on the as-applied constitutional challenge is that petitioner did not—and cannot—raise any potentially meritorious claims. The issues actually raised in the petition are therefore waived. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018). Even if they were not waived, we agree with the circuit court's analysis that all of the claims are either barred or otherwise fail to establish prejudice.

¶ 39                                III. CONCLUSION

¶ 40    We have no option but to affirm the order denying petitioner leave to file his third successive postconviction petition. Unlike the Illinois Supreme Court, we lack the supervisory authority that would allow us to review an as-applied constitutional claim that was not actually raised in the petition.

¶ 41    Affirmed.

14