2026 IL App (1st) 232431-U

Fourth Division
Filed February 19, 2026

No. 1-23-2431

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellee, | ) | |
| v. | ) ) | No. 09 CR 1753 |
| DARIONE ROSS, | ) ) | The Honorable Stanley Sacks, |
| Defendant-Appellant. | ) ) | Judge, presiding. |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro specially concurred, joined by Justice Quish.

**ORDER**

¶ 1     *Held*: The circuit court did not err in dismissing defendant's successive postconviction petition at the second stage of proceedings where he could not satisfy the cause element of the cause and prejudice test.

¶ 2     Defendant Darione Ross appeals the second stage dismissal of his successive petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). For the following reasons, we affirm.

¶ 3                               I.  BACKGROUND

¶ 4     In 2012, Ross was convicted of first degree murder and attempted robbery. Ross was 19 years old at the time of the offenses. He was sentenced to 50 years' imprisonment—45 years for first

degree murder and five years for attempted robbery, to be served consecutively. A full recitation of the facts is set out in *People v. Ross*, 2015 IL App (1st) 123136-U.

¶ 5    On direct appeal, this court affirmed Ross's conviction and sentence. *Id.* On January 11, 2016, Ross filed a postconviction petition, which was summarily dismissed. On appeal, this court granted appellate counsel's motion to withdraw and affirmed the circuit court's judgment. *People v. Ross*, No. 1-16-1322 (2018) (unpublished order under Illinois Supreme Court Rule 23(c)).

¶ 6    On February 28, 2017, Ross filed a *pro se* motion for leave to file a successive postconviction petition. Ross argued that his 50-year aggregate sentence was an unconstitutional *de facto* life sentence. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), and *People v. Reyes*, 2016 IL 119271, Ross argued that the circuit court must consider mitigation factors before sentencing a juvenile defendant to a *de facto* life sentence. Ross argued that while he was not a juvenile defendant, case law concerning young-adult offenders applied to him. Ross also citied *People v. Harris*, 2016 IL App (1st) 141744, and *People v. House*, 2015 IL App (1st) 110580, and argued that the reasoning of these cases applied to him because he was 19 years old at the time of his offenses, he did not have a history of violent crimes, he grew up with an alcoholic and drug-addicted father, and he became a drug addict himself. The circuit court denied Ross's leave to file his successive postconviction petition.

¶ 7    We reversed and remanded for second-stage postconviction proceedings, finding that Ross presented sufficient facts to warrant further proceedings on his proportionate penalties claim that *Miller* applied to him and was entitled to develop the record. *People v. Ross*, 2020 IL App (1st) 171202, ¶ 29-30. We found that Ross's claim regarding the eighth amendment of the United States Constitution did not have merit. *Id.* ¶ 30.

¶ 8    On remand, Ross filed supplemental exhibits to his petition. The first exhibit was an affidavit from Ross which detailed his family history and his background. Ross attested that he grew up in "gang infested" neighborhoods, where there the gangs would pressure and coerce people into joining. Ross grew up in poverty. School was dangerous, which made it hard for him to focus on assignments and school projects. Ross attested that he had to worry about gangs and getting his

siblings home safely. Ross witnessed or was involved in fights every day due to "peer pressure" because not engaging in the fights was perceived as weakness and led to repeated victimization. Ross further attested that his parents were not positive role models. They were either too busy at work, high on drugs, or drunk. Ross and his siblings had to fend for themselves at an early age. There were times when they had nothing to eat, and Ross and his siblings went through phases of starvation. Ross completed eighth grade. When he was about 15 or 16 years old, Ross was shot at by different gangs. He also went to juvenile detention for selling drugs to earn money for his family as his father was in prison. While in prison, Ross obtained his GED, became a licensed barber, maintained a great institutional record, and became a role model for younger inmates.

¶ 9        Other exhibits included copies of Ross's GED certificate and a personal success award he received in his creative art class. The final exhibit was a report, which discussed advances in contemporary psychology and neuroscience research relating to late adolescent brain development.

¶ 10       The State filed a motion to dismiss Ross's postconviction petition. It argued that Ross could not meet the cause test in order to file a successive postconviction petition. The court granted the State's motion and dismissed Ross's petition. This appeal timely follows.

¶ 11                                    II.  ANALYSIS

¶ 12       On appeal, Ross contends that his petition established cause and made a substantial showing of a constitutional violation.

¶ 13                          A.  Postconviction Hearing Act

¶ 14       The Act provides a mechanism for a criminal defendant to raise a claim that they were substantially deprived of a right under the United States Constitution or the Illinois Constitution. 725 ILCS 5/122-1(a)(1) (West 2022). The Act contemplates the filing of one petition, and any claims not presented in the initial petition are forfeited. 725 ILCS 5/122-1(f) (West 2022). "Successive petitions are highly disfavored, and the statutory bar will be relaxed only when fundamental fairness requires it." *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶ 22. Leave of court to file a successive petition "may be granted only if a petitioner demonstrates cause for his

or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2022). Under the cause and prejudice test, a defendant must establish both cause and prejudice. *People v. Allen*, 2019 IL App (1st) 162985, ¶ 32. A defendant demonstrates "cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings" and "prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 15    A petition should be dismissed at the second stage when its allegations of fact, "liberally construed in favor of the petitioner and in light of the original trial record," fail to make a "substantial showing" of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). At this stage, the defendant has the burden of making a substantial showing of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 35. The court must take all well-pleaded facts in the petition as true unless they are refuted by the record. *Id*. The court must determine if "the legal sufficiency of the petition's well-pled allegations of a constitutional violation, *which if proven* at an evidentiary hearing, would entitle petitioner to relief." *Id*. We review the dismissal of a postconviction petition at the second stage *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29.

¶ 16                                    B.  Cause

¶ 17    The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A sentence "violates the proportionate penalties clause if the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." *People v. Hillard*, 2023 IL 128186, ¶ 20. The proportionate penalties clause provides broader protection than the eighth amendment. *People v. Gipson*, 2015 IL App (1st) 122451, ¶¶ 69-78; *People v. Clemons*, 2012 IL 107821, ¶ 36.

¶ 18     Young adults are not foreclosed from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science regarding juvenile maturity and brain development. *People v. Clark*, 2023 IL 127273, ¶ 87; *People v. Harris*, 2018 IL 121932, ¶ 48. However, during the pendency of Ross's second stage proceedings, the supreme court limited the availability of proportionate penalties relief in successive postconviction petitions. In *People v. Dorsey*, the supreme court has concluded that *Miller* does not provide cause for a defendant to raise a claim under the proportionate penalties clause. *People v. Dorsey*, 2021 IL 123010, ¶ 74. It reasoned that "Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing." *Id*. *Miller*'s unavailability prior to 2012 "deprived defendant of some helpful support for his state constitutional law claim, which is insufficient to establish cause." *Id*.

¶ 19     In *Clark*, the supreme court concluded that *Miller* did not provide cause for raising a proportionate penalties claim in successive postconviction petitions as a defendant "had the essential legal tools" to raise the claim in his initial postconviction petition. *Clark*, 2023 IL 127273, ¶ 93. The court distinguished its decisions in *Harris* and *People v. Thompson*, 2015 IL 115151, by stating that they "addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions." (Emphasis in original.) *Clark*, 2023 IL 127273, ¶ 88.

¶ 20     Further, our supreme court has concluded that "[a]s *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause." *People v. Moore*, 2023 IL 126461, ¶ 40. The supreme court reiterated that, " 'long before *Miller*, Illinois law recognized the special status of juvenile offenders for purposes of applying the principles under the proportionate penalties clause.' " *Id.* ¶ 41 (quoting *Clark*, 2023 IL 127273, ¶ 61). As *Miller* did not change the law applicable to discretionary sentencing imposed on young adults, it did not provide cause for proportionate penalties challenges in successive postconviction petitions. *Id.* ¶¶ 42, 44.

¶ 21    Finally, in *People v. Hilliard*, 2023 IL 128186, the supreme court reiterated its narrow view of *Thompson* and *Harris*, and it noted that the *Miller*-based proportionate penalties challenge in *People v. House*, 2021 IL 125124, involved both a mandatory life sentence and an initial postconviction petition. *Hilliard*, 2023 IL 128186, ¶ 27.

¶ 22    On appeal, Ross asserts that he is not relying on the unavailability of *Miller* as the cause for his failure to raise a proportionate penalties claim earlier. Rather, he is relying on new scientific evidence supporting his claim that did not exist at the time of the *Miller* decision. The new evidence Ross relies on is the 2022 research paper published by the Center for Law, Brain & Behavior at Massachusetts General Hospital entitled *White Paper on the Science of Late Adolescence: A Guide for Judges, Attorneys, and Policy Makers*. *Available at* https://clbb.mgh.harvard.edu/wp-content/uploads/CLBB-White-Paper-on-the-Science-of-Late-Adolescence-3.pdf. This court has previously rejected the argument that recent neuroscientific research can provide the necessary cause for raising a proportionate penalties claim in a successive postconviction petition. *People v. Minniefield*, 2025 IL App (1st) 240463-U, ¶ 66; but see *id.* ¶¶ 93-94 (Ocasio, J., specially concurring) (reluctantly agreeing in the "extremely troubling" result required by supreme court precedent); see also *People v. Scaggs*, 2025 IL App (1st) 240953-U, ¶¶ 46, 49-51; *People v. Robinson*, 2025 IL App (1st) 231419-U, ¶¶ 59, 62-64; *People v. Searles*, 2024 IL App (1st) 210043-U, ¶¶ 13-17. Following the reasoning in these cases, we conclude that the recent scientific research does not provide Ross the necessary cause for a successive postconviction petition.

¶ 23    In support of his argument, Ross relies on *People v. Blalock*, 2022 IL 126682. In *Blalock*, the defendant argued that he established cause for failing to argue that his confession was coerced because he could not have discovered evidence of a "pattern and practice of police brutality" before filing his initial postconviction petition. *Id.* ¶ 40. Our supreme court held that cause is satisfied by "a showing that the factual or legal basis for a claim was not reasonably available to [defense] counsel." *Id.* ¶ 39. The court found that "newly discovered evidence of police coercion may, depending on the individual circumstances of the case, provide cause for permitting the filing of a successive postconviction petition." *Id.* ¶ 42. It emphasized that "evidence of a pattern and practice

of police misconduct is part of the factual basis of a coerced confession claim." *Id.* ¶ 45. Additionally, the insidious nature of police abuse makes gathering this type of evidence particularly difficult. *Id.* ¶ 44. Without corroborating evidence, a defendant could not make a claim that his confession was coerced. *Id.*

¶ 24       The factual basis for a sentencing challenge based on a petitioner's age "is that fully developed adults are different from young adults who are still developing." *Searles*, 2024 IL App (1st) 210043-U, ¶ 17. Illinois courts have long recognized this distinction. See *People v. Haines*, 2021 IL App 190612, ¶ 47; *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 422-23 (1894) (recognizing distinctions between "persons of mature age" and "minor[s] between the ages of 16 and 21 years"). Unlike in *Blalock*, Ross did not need any external corroborating evidence before he could raise his proportionate penalties claim. He had "the essential legal tools" necessary to make that argument in his initial petition. *Moore*, 2023 IL 126461, ¶ 42; *Clark*, 2023 IL 127273, ¶ 93; *Dorsey*, 2021 IL 123010, ¶ 73.

¶ 25       We recognize the fact that research regarding brain development is new and ongoing; nevertheless, "[w]e are bound by the supreme court's decisions regarding *Miller* as they relate to the proportionate penalties clause for young adults." *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62. Following *Dorsey*, *Clark*, *Moore*, and *Hilliard*, the claim at issue "should be viewed as nothing more than an extension of proportionate penalties claims that have existed all along." *Id.* (citing *Dorsey*, 2021 IL 123010, ¶ 74; *Clark*, 2023 IL 127273, ¶¶ 92-93; *Moore*, 2023 IL 126461, ¶¶ 40-42; *Hilliard*, 2023 IL 128186, ¶ 28). We acknowledge that the influence of poverty and trauma on the sentencing of young adults is a complex issue. Young adults growing up in poverty face numerous challenges that can indirectly lead to an increased likelihood of encountering the criminal justice system. Christopher Lewis, *Risk-Based Sentencing and the Principles of Punishment*, 112 J. Crim. L. & Criminology 213, 254-55 (2022); see Salua Kamerow, *Redefining Youth: The Case for Applying the Principles of Miller v. Alabama to Criminal Cases Involving Adults in Late Adolescence*, 26 Rich. Pub. Int. L. Rev 25, 39-40 (2023).

¶ 26 More emerging adults are invoking proportional penalties clause in postconviction proceedings, suggesting that judges are failing to fully consider mitigation in their sentencing decisions. Trauma, particularly when experienced during childhood or adolescence, can have profound effects on an individual's behavior and psychological well-being. Lewis, *supra*, at 255. In the courtroom, the impact of poverty and trauma is not always adequately considered. Without proper consideration of both poverty and trauma, sentencing can be disproportionately harsh.

¶ 27 Nevertheless, Ross cannot establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition because "a proportionate penalties claim was always available to him in some form." *Horshaw*, 2024 IL App (1st) 182047-B, ¶ 63 (citing *Moore*, 2023 IL 12646, ¶¶ 40-42). As Ross has not established cause, we need not address whether he sufficiently established prejudice or his further contention regarding a substantial showing of a constitutional violation. *Moore*, 2023 IL 126461, ¶ 42.

¶ 28                                   III.  CONCLUSION

¶ 29 Based on the foregoing reasons, we affirm the circuit court's judgment.

¶ 30 Affirmed.

¶ 31 PRESIDING JUSTICE NAVARRO, specially concurring:

¶ 32 I agree with the conclusion that this case should be affirmed. However, I write separately to clarify that I do not join in paragraph 26 of the lead opinion.

¶ 33 JUSTICE QUISH joins in this special concurrence.