2025 IL App (1st) 220625-U
Nos. 1-22-0625 & 1-23-1609 (cons.)

FIRST DIVISION
August 11, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 90 CR 24789 |
| | ) | |
| ROBERT ORNELAS, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Nicholas R. Ford and James B. |
| | ) | Linn, |
| | | Judges Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held:* The circuit court did not err in dismissing defendant's successive postconviction petition at the second stage of proceedings and denying defendant leave to file two other successive postconviction petitions where defendant could not satisfy the cause element of the cause and prejudice test.

¶ 2    In these consolidated appeals, defendant Robert Ornelas appeals the second-stage dismissal of a successive petition for postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) and the denial of two motions for leave to file successive postconviction petitions. On appeal, defendant contends that the circuit court erred in not

advancing the petitions because he made a substantial showing that his mandatory sentence of natural life imprisonment was unconstitutional as applied to him, an 18-year-old emerging adult, under the proportionate penalties clause of the Illinois Constitution. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged by indictment with the first degree murders of Jay Mosqueda and Robert Cheeks (Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(1)-(2)) with a firearm. Following a 1996 bench trial, defendant was found guilty and sentenced to a term of natural life imprisonment. The facts of the case have been detailed in this court's order on direct appeal and those related to prior collateral proceedings. See *People v. Ornelas*, 295 Ill. App. 3d 1037 (1998); see also *People v. Ornelas*, 2012 IL App (1st) 102100-U. Thus, we will only recount the facts necessary to resolve the issue on appeal.

¶ 5                        A. Pretrial Proceedings and Bench Trial

¶ 6        Prior to trial, defendant filed separate motions to quash his arrest and suppress an inculpatory statement he made to the police, arguing collectively that the police lacked probable cause to arrest him, his statement to police was involuntary because he was under the influence of narcotics and was obtained as a result of physical, psychological, and mental coercion. The court denied both motions, finding the police had probable cause to arrest defendant, he gave the statement voluntarily and was not under the influence of narcotics when he did so, and he was not abused or coerced by the police.

¶ 7        At trial, the State presented evidence that on November 11, 1990, Mosqueda and Cheeks were killed while sitting in a vehicle. They had gunshot wounds to their face and neck, respectively, and two spent shotgun shells were on the ground. The forensic pathologist testified

that Mosqueda died from a shotgun wound to his face, Cheeks died from multiple shotgun wounds, and the manner of both deaths was homicide. During the course of the police investigation, defendant gave the officers a statement in which he admitted to the killings, but claimed he discharged the firearm in self-defense. Defendant relied upon a theory of self-defense during his case-in-chief. The court found defendant guilty of all counts of first degree murder.

¶ 8                                     B. Sentencing

¶ 9         Defendant waived his right to have a jury determine whether the death penalty would be imposed. The trial court found that defendant was eligible for the imposition of capital punishment, because he was 18 years old at the time of the offense and was found guilty of four counts of the first degree murder of two victims.

¶ 10         At a sentencing hearing, the State presented, *inter alia*, evidence that defendant had committed several violations while incarcerated in the Cook County Department of Corrections, including striking a corrections officer with a door panel and throwing his lunch at him, possessing two jail made knives or "shanks" in his jail cell, and fighting with other inmates. The State also presented the victim impact statement of Mosqueda's sister wherein she described how his death impacted her and her desire for the court proceedings to end.

¶ 11         Sarah Vasquez (Sarah), defendant's sister, testified in mitigation that defendant became withdrawn when he turned 13 years old, became involved with gangs, and began taking drugs. Defendant participated in psychological inpatient treatment, including family counseling, which improved his attitude and grades. Approximately a year after further outpatient treatment was completed, defendant "backslid." She requested the court show leniency, and stated that his family could "help him through all this."

¶ 12      Defendant's father, Francisco Ornelas (Francisco), testified in mitigation that he had a "problem" with alcohol for the first 14 years of defendant's life and was violent toward him. He encouraged defendant "never to run away from a fight." Even though Francisco joined Alcoholics Anonymous and became sober, his relationship with defendant "was broken up." Defendant "backslid" after outpatient treatment, but was never violent toward his family and never stole from them. Francisco stated that he failed defendant as a father, and asked the court for mercy.

¶ 13      Clarence Dixon testified that he was a friend of the Ornelas family and a retired Battalion Chief for the Chicago Fire Department. Defendant was always respectful and polite to Dixon, and was only dishonest regarding his drug usage. According to Dixon, the neighborhood defendant lived in had changed over the past decade, and gangs had become more prevalent in the area.

¶ 14      The State argued in aggravation that defendant had a "short fuse" and was dangerous. The State emphasized the brutality of the offense, and argued that natural life imprisonment, the minimum sentence, was not appropriate for defendant's actions and requested the imposition of capital punishment.

¶ 15      Defense counsel argued in mitigation that defendant had no significant prior criminal history, acted under provocation, and turned to drugs and gang involvement at a young age, in part due to the difficulty of being the son of an alcoholic. Counsel argued that defendant attended church five to six times a week during his incarceration, and was taking an art class. Counsel concluded that the court should impose natural life imprisonment, "the only other choice" in the case.

¶ 16      In allocution, defendant apologized to his family and the families of the victims, and thanked his attorneys for fighting on his behalf.

¶ 17 The court declined to impose the death penalty and imposed a sentence of natural life imprisonment. It stated that it considered the factors in mitigation and aggravation and determined that the mitigating factors precluded the imposition of the death penalty.

¶ 18 C. Direct Appeal

¶ 19 On direct appeal, defendant argued (1) the trial court erred in denying his motion to quash arrest, and (2) the State did not prove his guilt beyond a reasonable doubt because he acted in self-defense. We affirmed. *Ornelas*, 295 Ill. App. 3d 1037 (1998).

¶ 20 D. Initial Postconviction Petition

¶ 21 In 1999, defendant filed a postconviction petition through counsel, alleging ineffective assistance of trial counsel for failing to (1) call a witness at his pretrial suppression hearing that would testify that defendant's statement was the result of physical abuse inflicted upon him by the detectives, and (2) interview and call other witnesses who experienced systematic abuse known to occur at Area 2. He also argued that appellate counsel was ineffective for failing to raise these issues on appeal. The petition was advanced to third-stage proceedings, where the court dismissed the petition after an evidentiary hearing. We affirmed where defendant did not establish the circuit court erred in finding that his trial counsel's suppression strategy was not unreasonable and, regardless, defendant did not establish that he was prejudiced by it. *Ornelas*, 2012 IL App (1st) 102100-U.

¶ 22 E. Section 116-3 Motion for Forensic Testing

¶ 23 In 2014, defendant filed a *pro se* motion seeking the results of the forensic testing of his sweater, which was purportedly tested prior to trial, but the results were never disclosed. The court denied the motion. We affirmed, finding that defendant failed to present a *prima facie* case that testing was warranted, and even if he had, further forensic testing would not have produced new,

noncumulative evidence materially relevant to defendant's claim of actual innocence. *People v. Ornelas*, 2017 IL App (1st) 150130-U.

¶ 24                                 E. First Successive Postconviction Petition

¶ 25        On October 14, 2016, defendant filed a *pro se* successive postconviction petition, raising multiple claims of ineffective assistance of trial and appellate counsel, insufficient evidence to prove his guilt, and perjury by the State. Relevant here, defendant also argued that his natural life sentence was unconstitutional, and cited *People v. House*, 2015 IL App (1st) 110580, *vacated*, No. 122134 (Nov. 28, 2018) (supervisory order), where we found that the imposition of a mandatory natural life sentence for an emerging adult defendant was unconstitutional. Judge Nicholas Ford denied defendant leave to file his successive petition in a written order.

¶ 26        Defendant appealed. On May 7, 2019, this court granted defendant's agreed motion for summary disposition, vacating the court's judgment denying defendant leave to file his successive postconviction petition and remanding the matter for further postconviction proceedings. *People v. Ornelas*, Nos. 1-17-0230 & 1-17-1877 (cons.) (May 7, 2019) (disposition order). The matter was transferred from Judge Ford to Judge James Linn.

¶ 27        On remand, the circuit court then advanced the petition to the second stage of proceedings and postconviction counsel was appointed. Postconviction counsel filed two supplemental successive postconviction petitions on August 23, 2019, and March 8, 2021, arguing that defendant's sentence was unconstitutional under the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution. His March 8, 2021, amended supplemental postconviction petition asserted that defendant was 18 years old at the time of the offense, was a former gang member, and had been using drugs and alcohol habitually since he was 12 or 13 years old. Further, his father also had a "drinking problem" that caused defendant

to "rebel." Postconviction counsel noted that the trial court did not acknowledge defendant's youth and attendant characteristics in imposing sentence. Additionally, counsel asserted that defendant had completed several seminary and educational courses during his imprisonment.

¶ 28        During the pendency of proceedings, defendant's initial postconviction counsel retired, and a new postconviction counsel was appointed. On December 27, 2022, defendant's second postconviction counsel filed a third amended supplemental successive petition, arguing that defendant's mandatory life sentence violated the proportionate penalties clause of the Illinois Constitution because he was the functional equivalent of a juvenile at the time of the offense. Further, the sentencing court was unable to consider the evolving neuroscience regarding the brain development of emerging adults at the time of sentencing because it was restricted to imposing either the death penalty or natural life imprisonment. Counsel contended that the sentencing court's consideration of the statutory guidelines for determining whether the death penalty could be imposed did not include the attendant characteristics of youth and the evolving neuroscience regarding emerging adult offenders. Counsel attached affidavits from defendant's family members averring to the difficult circumstances of defendant's youth, gang involvement, drug and alcohol use, and immaturity at the time of the offense.

¶ 29        On July 26, 2023, the State filed a motion to dismiss defendant's successive petition, arguing that *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny did not provide cause for an emerging adult defendant to raise a violation of the proportionate penalties clause in a successive postconviction petition. See *People v. Moore*, 2023 IL 126461.

¶ 30        On August 24, 2023, the court granted the State's motion to dismiss. Defendant filed a timely appeal, which was assigned appellate court case number 1-23-1609.

¶ 31                      F. Second Successive Petition Proceedings

¶ 32        On January 17, 2018, defendant filed a second *pro se* motion for leave to file a successive postconviction petition, arguing that his natural life sentence was unconstitutional as applied to him because he was 18 years old at the time of the offense, more like a juvenile than an adult, and exhibited "evidence of rehabilitation potential." Defendant contended that he established cause to file the successive petition because *Miller* and its progeny were not available when he was sentenced. Defendant also argued that he was actually innocent, the prosecution "collu[ded]" with the Area 2 detectives in falsifying "an involuntary/coerced statement," the detectives perjured themselves during pretrial, trial, and postconviction proceedings, and his trial counsel was ineffective.

¶ 33        On January 25, 2018, defendant filed the successive postconviction petition, arguing the same points as in the motion. Defendant additionally contended that he was raised in "a community and culture in which murder and violence [are] routine." He described his violent youth, gang history, and drug and alcohol use. Defendant stated that he feared the police, who beat and threatened him, and he believed that they would murder him. He also described his rehabilitative potential, including his work history, education, and community outreach during his imprisonment. Defendant concluded by requesting a neuropsychological evaluation in order to provide support for his sentencing claim.

¶ 34        Defendant attached, *inter alia*, articles summarizing current case law and neuroscience regarding juveniles and emerging adults, his high school transcripts, letters extending job offers to him upon his release from prison, and certificates of achievement and diplomas for education completed during his incarceration.

¶ 35        On March 25, 2019, Judge Ford denied defendant leave to file his second successive postconviction petition in a written order. In relevant part, the court found that defendant did not

satisfy the cause and prejudice test for filing his successive petition because *Miller* did not apply to defendant as an emerging adult.

¶ 36     On April 21, 2019, defendant mailed a motion to reconsider the court's ruling, which was filed on May 1, 2019. He attached an April 9, 2019, letter from his appellate counsel regarding the agreed motion to remand his first successive petition for further postconviction proceedings regarding the sentencing issue. The record on appeal does not contain any ruling on this motion.

¶ 37     Defendant filed a motion seeking leave to file a late notice of appeal in this court on May 5, 2022. The appeal was docketed under appellate court case number 1-22-0625. On June 3, 2022, we denied defendant leave to file his late notice of appeal due to a lack of jurisdiction, but noted that the order was without prejudice to defendant's right to seek a supervisory order from the Illinois Supreme Court. Defendant subsequently sought a supervisory order, and on September 26, 2023, the Illinois Supreme Court entered an order directing this court to vacate its June 3, 2022, order denying defendant leave to file a late notice of appeal and to allow the motion for leave to file the late notice of appeal. This court granted defendant leave to file late notice of appeal on October 2, 2023, under appellate court case number 1-22-0625.

¶ 38                           G. Third Successive Petition Proceedings

¶ 39     On July 7, 2020, defendant filed a *pro se* motion for a "new trial," arguing in part that he established cause to file a successive postconviction petition because new case law and scientific research established that the brain of an emerging adult is similar to that of a juvenile. Defendant also raised multiple claims of ineffective assistance of trial and appellate counsel, trial and postconviction court error, and bias by the postconviction court.

¶ 40 On August 24, 2023, Judge Linn recharacterized defendant's *pro se* motion as a motion seeking leave to file a successive postconviction petition, and denied the motion in a written order. That day, defendant filed a notice of appeal.

¶ 41 On September 14, 2023, defendant filed a *pro se* motion to reconsider the denial of his motion for new trial, arguing that the trial court did not properly review the motion, and abused its discretion in recharacterizing it as a successive postconviction petition. Regardless, defendant contended that he satisfied the cause and prejudice test to warrant further postconviction proceedings. The circuit court denied defendant's motion to reconsider in a written order on October 5, 2023.

¶ 42 On June 20, 2024, the Illinois Supreme Court issued a supervisory order directing this court to treat the notice of appeal filed on August 24, 2023, and assigned appellate case number 1-23-1609, as a properly perfected appeal from the circuit court's October 5, 2023, judgment denying defendant's motion to reconsider.

¶ 43 On June 25, 2024, we consolidated the appeals under appellate case numbers 1-22-0625 and 1-23-1609.

¶ 44           II. ANALYSIS

¶ 45 On appeal, defendant argues that the trial court erred in dismissing his successive postconviction petition at the second stage of proceedings, because he made a substantial showing of a constitutional violation. Specifically, defendant contends that his mandatory sentence of natural life imprisonment violated the proportionate penalties clause of the Illinois Constitution as applied to him. He argues that we should remand the matter for a third-stage evidentiary hearing where he made a sufficient legal and factual showing to warrant further proceedings.

¶ 46         A. Post-Conviction Hearing Act

¶ 47    The Act provides a three-stage mechanism by which defendants can challenge their convictions for violations of federal or state constitutional rights in collateral proceedings. 725 ILCS 5/122-1 *et seq.* (West 2016); *People v. LaPointe*, 227 Ill. 2d 39, 43 (2007). "Successive petitions are highly disfavored, and the statutory bar will be relaxed only when fundamental fairness requires it." *People v. Figueroa*, 2022 IL App (1st) 172390-B, ¶ 22.

¶ 48    Under section 122-1(f) of the Act, only one postconviction petition may be filed by a defendant without leave of court. 725 ILCS 5/122-1(f) (West 2016); *People v. Lusby*, 2020 IL 124046, ¶ 27. Leave of court "may be granted only if a [defendant] demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." 725 ILCS 5/122-1(f) (West 2016).[1] The defendant may demonstrate cause by "identifying an objective factor that impeded his or her ability to raise" the claim during initial proceedings, and prejudice by "demonstrating that the claim not raised" during the initial proceedings "so infected the trial that the resulting conviction or sentence violated due process." *Id*.

¶ 49    The cause and prejudice standard is "more exacting" than review of an initial postconviction petition. *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 21. Both prongs of the cause and prejudice test must be satisfied for a court to grant leave to file a successive petition. See *People v. Wilson*, 2023 IL 127666, ¶ 25. Leave to file a successive petition should be denied "when it is clear, from a review of the successive petition and the documentation submitted by the

---

[1] Leave of court may also be granted where a defendant "asserts a fundamental miscarriage of justice based on actual innocence." *People v. Robinson*, 2020 IL 123849, ¶ 42. Although defendant asserted an actual innocence claim in his second successive petition, he does not address this issue on appeal.

petitioner, that the claims alleged by the petitioner fail as a matter of law." *People v. Smith*, 2014 IL 115946, ¶ 35.

¶ 50       If a court grants the defendant leave to file the successive petition, the matter progresses to second-stage proceedings, where the State may seek dismissal on any grounds, including the defendant's failure to prove cause and prejudice for not raising the claims in the initial postconviction petition. *Bailey*, 2017 IL 121450, ¶ 26.

¶ 51                                B. Standard of Review

¶ 52       In the case at bar, the circuit court granted the State's motion to dismiss defendant's first successive postconviction petition at the second stage of proceedings. The dismissal of a successive postconviction petition without a third-stage evidentiary hearing is reviewed *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31. The circuit court additionally denied defendant leave to file his second and third successive postconviction petitions. We also review a denial of leave to file a successive petition *de novo*. *Lusby*, 2020 IL 124046, ¶ 27.

¶ 53                C. Evolving Case Law Applying *Miller v. Alabama*, 567 U.S. 460 (2012)

¶ 54       Defendant's claim arises from *Miller* and its progeny, which establish that the eighth amendment requires sentencing courts "to have discretion in sentencing juveniles after considering the juvenile's youth and the attendant characteristics of youth." *Clark*, 2023 IL 127273, ¶ 54. The basis for this requirement is that juveniles "have diminished culpability and greater prospects for reform," and are, thus, "less deserving of the most severe punishments." (Internal quotation marks omitted.) *Miller*, 567 U.S. at 471. *Miller* discussed juveniles' lack of maturity, recklessness, vulnerability to peer pressure and negative external influences, and that they have characters and traits which are "not as well formed as an adult's" and, thus, "less likely to be evidence of irretrievable depravity." (Internal quotation marks omitted.) *Id*. In Illinois, the supreme court has

expanded this rule to include *de facto* life sentences, defined as prison terms exceeding 40 years. See *People v. Buffer*, 2019 IL 122327, ¶ 41.

¶ 55        The supreme court has not "foreclosed" emerging adults, like defendant, from raising as-applied *Miller*-based proportionate penalties challenges to mandatory life sentences in initial postconviction petitions based on the evolving science on juvenile maturity and brain development. *Clark*, 2023 IL 127273, ¶ 87 (citing *People v. Thompson*, 2015 IL 118151, ¶ 44 (concerning a 19-year-old defendant sentenced to a term of natural life)); *People v. Williams*, 2024 IL 127304, ¶ 29. Such a claim requires an evidentiary record as to how the evolving science regarding maturity and brain development applies to the defendant's specific circumstances. *People v. House*, 2021 IL 125124, ¶ 29.

¶ 56        However, recent supreme court rulings have established that *Miller* and its progeny do not provide "cause" for emerging adult offenders to file successive postconviction petitions arguing proportionate penalties claims directed at their sentences. See *Moore*, 2023 IL 126461, ¶¶ 38-44 (denying leave to file successive petition for the defendants, emerging adult offenders, who argued that their sentences violated the proportionate penalties clause of the Illinois Constitution).

¶ 57        Mindful of this framework, we turn to the merits of defendant's argument on appeal.

¶ 58                    C. Whether the circuit court erred in not advancing defendant's successive petitions

¶ 59        As an initial matter, we note that the three successive postconviction petitions at issue in these consolidated appeals contained multiple constitutional claims, including ineffective assistance of counsel and prosecutorial misconduct. On appeal, defendant only advances the proportionate penalties argument from his successive petitions. Thus, we find that the remaining claims in his petitions are forfeited on appeal. See *People v. Dorsey*, 2021 IL 123010, ¶ 70.

¶ 60    The court did not err in granting the State's motion to dismiss defendant's successive postconviction petition at the second stage of proceedings or denying him leave to file his subsequent successive postconviction petitions. Upon remand, the circuit court advanced defendant's first successive postconviction petition to the second stage of proceedings. Postconviction counsel was appointed and filed several supplemental successive postconviction petitions. During the pendency of second stage proceedings, the Illinois Supreme Court published *People v. Clark*, 2023 IL 127273, and *People v. Moore*, 2023 IL 126461, where it determined that *Miller* did not provide cause for emerging adult offenders to raise a claim under the proportionate penalties clause in successive postconviction petitions. See *People v. Spencer*, 2025 IL 130015, ¶ 31 (*Miller* "does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause in a successive postconviction petition"). For this same reason, the court denied defendant leave to file his two subsequent successive postconviction petitions. As defendant was unable to establish cause to file the successive petitions, the court did not err in not advancing them.

¶ 61    Defendant acknowledges the *Clark* and *Moore* decisions, but contends that his case is distinguishable because the three defendants in *Clark* and *Moore* all were subject to discretionary, rather than mandatory, life sentences. Defendant argues that because the sentencing court was unable to consider his youth and its attendant characteristics in sentencing him to a mandatory natural life sentence, he has established cause to file a successive postconviction petition. He further argues that he asserted individualized facts and circumstances which show that his sentence violated the proportionate penalties clause, including facts related to his difficult childhood, gang involvement, and alcohol and substance abuse.

¶ 62   Defendant's contention that *Clark* and *Moore* only apply to emerging adult offenders with discretionary life sentences is not persuasive. The *Clark* court specified that case law related to emerging adult offenders "addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions." (Emphasis in original.) *Clark*, 2023 IL 127273, ¶ 88; see *Spencer*, 2025 IL 130015, ¶ 31 (*Miller* "does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause in a successive postconviction petition"); see also, *People v. Hilliard*, 2023 IL 128186, ¶27. As such, we have regularly found that emerging adults are foreclosed from raising *Miller*-based proportionate penalties claims in successive postconviction petitions, regardless of whether their sentences were discretionary or mandatory. See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 62 (noting that the current case law "opened the door only wide enough to accommodate claims involving mandatory life sentences that were raised in *initial* postconviction petitions (Emphasis added.)"). Thus, defendant cannot establish cause for his failure to raise his proportionate penalties claim in his initial postconviction petition because such a claim was always available to him as he could have raised a proportionate penalties challenge in his initial postconviction petition and "*Miller* was simply helpful support and not the basis for a new claim." See *id*. ¶ 63. Having determined that defendant cannot establish cause, we need not determine whether he provided the required factual support to warrant further proceedings.

¶ 63   Accordingly, the circuit court did not err in dismissing defendant's first successive postconviction petition at the second stage of proceedings, and denying defendant leave to file his two subsequent successive petitions.

¶ 64             III. CONCLUSION

¶ 65   For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 66        Affirmed.