2026 IL App (1st) 240714

SIXTH DIVISION

June 5, 2026

No. 1-24-0714

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 97CR15419 |
| | ) | |
| JOHNNY CONWELL, | ) ) | Honorable James B. Novy, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Justice Hyman concurred in the judgment and opinion.
Justice Hyman also specially concurred, with opinion, joined by Presiding Justice C.A. Walker.
Justice Gamrath dissented, with opinion.

**OPINION**

¶ 1    This appeal concerns whether a person barely 18 years old and sentenced to mandatory natural life without the possibility of a lesser sentence may proceed on a successive postconviction claim that this sentence violates the proportionate penalties clause.

¶ 2      Following a severed bench trial at which the circuit court heard evidence relating to two separate indictments, defendant Johnny Conwell was found guilty of two counts of first degree murder and one count of attempted first degree murder stemming from the May 4, 1997, shooting death of Michael Williams, and the May 5, 1997, shooting death of Penny Simmons. Conwell was 18 years and 1 month old at the time he committed the offenses. The court additionally found Conwell guilty of multiple counts of attempted first degree murder and aggravated discharge of a firearm. After conducting a separate sentencing hearing, at which the court declined to impose the death penalty, Conwell was sentenced to life imprisonment without the possibility of parole. On November 1, 2002, a summary order was entered rejecting Conwell's *Apprendi* claim (see *Apprendi v. New Jersey*, 530 U.S. 466 (2000)) and directing the clerk of the circuit court to correct the mittimus to reflect a single conviction of first degree murder. A corrected mittimus was entered on November 27, 2002.

¶ 3      In 2002, Conwell filed a *pro se* petition for relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2002)), alleging he was denied a fair trial when the court permitted him to be tried simultaneously on two first degree murder charges. He further asserted trial counsel rendered ineffective assistance by failing to investigate the case, prepare an adequate defense, interview the State's witnesses, or present witnesses on his behalf, thereby abandoning professional responsibilities. He also alleged prosecutorial misconduct, claiming the State employed improper tactics to prevent certain facts, information, and witnesses from being presented to the court. On November 27, 2002, the court summarily dismissed the petition.

¶ 4      Nearly two decades later, Conwell sought leave to file a successive petition for postconviction relief, relying upon *Miller v. Alabama*, 567 U.S. 460 (2012). In his proposed petition, Conwell argued his sentence of natural life imprisonment, as well as what he characterized

as a *de facto* life sentence, violated the eighth amendment to the United States Constitution and the proportionate penalties clause of the Illinois Constitution (U.S. Const., amend. XIII; Ill. Const. 1970, art. I, § 2).

¶ 5 In July 2023, the State moved to dismiss the successive petition. The matter was before Judge James B. Linn, who originally sentenced Conwell in 2002. On August 16, 2023, Judge Linn stated: "I had no discretion to give him anything less than natural life."

¶ 6 After multiple continuances to permit review of the parties' pleadings and the transcripts of arguments, Judge Linn retired, and a different circuit court judge granted the State's motion to dismiss Conwell's petition on March 18, 2024. On appeal, Conwell contends the court erred in dismissing his successive postconviction petition where he made a substantial showing that his mandatory natural life sentence violates the proportionate penalties clause of the Illinois Constitution. For the following reasons, we reverse and remand to the circuit court because fundamental fairness and the integrity of the judicial process warrant further proceedings for development of the record. The dissent says no distinction exists between mandatory and discretionary sentences for purposes of the "cause and prejudice" test. *Infra* ¶¶ 68-69. But that position is irreconcilable with rulings of our supreme court and *Miller*, which turned on the absence of sentencing discretion.

¶ 7                                    I. BACKGROUND

¶ 8 At trial, testimony established the offense occurred on May 4, 1997, at approximately 1:35 a.m. as Derrick Wright and Michael Williams were leaving the Three Brothers Club located on the 4300 block of West 16th Street in Chicago. Wright testified he observed Johnny Conwell exit an abandoned building in the vicinity and fire two shots in his direction. Wright ran back into the club as Williams also attempted to reenter the premises. Wright further stated that Conwell ran

around a vehicle parked in front of the abandoned building and discharged approximately 11 additional shots at Williams. Although Williams managed to make it inside the club, he succumbed to his injuries shortly thereafter. A postmortem examination determined the cause of death was multiple gunshot wounds.

¶ 9    The following evening, on May 5, 1997, at approximately 10:40 p.m., Wright was present on the 1600 block of South Homan Avenue in Chicago with a group of young women. Wright observed a van approach and identified Conwell extending a firearm from the passenger side window and discharging multiple shots in his direction. Wright stated he turned to flee and heard several additional gunshots, at which time he was struck in the back. The evidence further established that Penny Simmons sustained multiple gunshot wounds during the incident and subsequently succumbed to her injuries.

¶ 10   Conwell was charged in two separate cases arising from the distinct shooting incidents that occurred on May 4 and 5, 1997. The matters proceeded in severed bench trials under case numbers 97CR15419 and 97CR15421. Because the present appeal concerns only Conwell's conviction and sentence in 97CR15419, our discussion is limited to those proceedings. The May 5, 1997, incident underlying case No. 97CR15421 is referenced solely to provide procedural context and is not at issue in this appeal.

¶ 11   The court denied Conwell's motion for a directed finding of not guilty and found him guilty of the first degree murder of Williams and attempted murder and aggravated discharge of a firearm for shooting Wright.

¶ 12   The presentence investigation report (PSI) reflected Conwell was raised by his mother in a "rough" neighborhood on the west side of Chicago. His father resided with the family until he was four years old. Following his father's departure from the home, they maintained a fair relationship

through weekly visits. Conwell described his childhood as normal, and he never experienced any form of abuse within the household. The PSI further noted he was diagnosed as schizophrenic and received psychiatric care every month for a period of one year.

¶ 13    The State sought the death penalty on the basis Conwell was over the age of 18 at the time of the murders. In mitigation, Conwell presented testimony from Dr. Michael Stone, a licensed clinical psychologist. Dr. Stone stated Conwell had head trauma and indicated brain problems. He diagnosed Conwell with "delusional disorder, persecutory-type, post traumatic stress disorder, [and] chronic learning disorder." He also diagnosed Conwell with paranoid personality disorder and determined he had an IQ of 76, placing him at the "borderline level, which is the lowest five percent of the population."

¶ 14    On direct appeal, Conwell alleged his consecutive sentences were unconstitutional under *Apprendi*, 530 U.S. 466. *People v. Conwell*, 329 Ill. App. 3d 1227 (2002) (table) (unpublished order under Illinois Supreme Court Rule 23). The court affirmed Conwell's sentencing in a summary order, as his claim was without merit. Conwell's petition for leave to appeal was denied in *People v. Conwell*, 201 Ill. 2d 582 (2002) (table).

¶ 15    On October 9, 2002, Conwell filed a petition for postconviction relief asserting his rights under the fourteenth amendment to the United States Constitution were violated when the circuit court "failed to protect" his rights during trial. He further claimed he did not consent to the stipulations entered at trial and alleged prosecutorial misconduct. On November 22, 2002, the court denied Conwell's petition.

¶ 16    Nearly two decades later, Conwell filed a *pro se* motion seeking leave to file a successive petition for postconviction relief. He asserted his sentences violated the proportionate penalties

5

clause of the Illinois Constitution and the eighth amendment to the United States Constitution as applied to him.

¶ 17   In July 2023, postconviction counsel supplemented Conwell's petition with a psychological assessment conducted in 1993 by Dr. Nancy Feys, a 1993 feedback conference report from developmental pediatrician Dr. Thomas Blondis and an accompanying letter from the court, 1993 juvenile probation orders, a 1993 development pediatric evaluation by Dr. Blondis, and a 1993 crisis assessment prepared by a social worker. The State filed a motion to dismiss, arguing the claims were without merit and Conwell could not show cause for failing to raise them in his initial petition. On August 8, 2023, Conwell filed a response asserting that "parts of his brain related to good decision making and impulse control had not fully formed at the time of the offense." He further noted his childhood was stressful, disadvantaged, and traumatic, likely impairing the development of brain regions responsible for self-control and rendering his level of maturity more comparable to that of a juvenile than an adult. The State filed a motion to dismiss the petition on July 28, 2023, arguing *inter alia* that Conwell could not establish cause under the "cause-and-prejudice" test.

¶ 18    Judge Linn heard arguments on the State's motion to dismiss on August 16, 21, and 29, 2023. At the August 16 proceeding, Judge Linn noted that when the matter was before him many years ago, he "didn't feel like [he] had a whole lot of discretion" at sentencing and was "precluded by law" from imposing a term of years that might have met the needs of justice. He further indicated that, under current law, the sentencing analysis would be different.

¶ 19   Following Judge Linn's retirement, the case was transferred to Judge James Novy. After reviewing the trial transcripts, hearings, and pleadings, Judge Novy granted the State's motion to dismiss on March 18, 2024. This appeal followed.

¶ 20                                    II. JURISDICTION

¶ 21    The circuit court granted the State's motion to dismiss on March 18, 2024. Conwell timely filed a notice of appeal on March 20, 2024. Accordingly, this court has jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. Dec. 7, 2023).

¶ 22                                    III. ANALYSIS

¶ 23    On appeal, Conwell contends the circuit court erred in granting the State's motion to dismiss his successive postconviction petition because his as-applied proportionate penalties claim satisfied the cause-and-prejudice test. We find Conwell made a *prima facie* showing of both cause and prejudice sufficient to allow this successive petition to proceed. Our conclusion rests on three interrelated considerations: (i) Conwell received a mandatory life sentence that precluded meaningful consideration of youth, (ii) the original sentencing judge expressly stated he lacked discretion to impose a lesser sentence, and (iii) Conwell's claim depends on individualized evidence and scientific developments not previously capable of meaningful presentation.

¶ 24    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(a)(1) (West 2020)) "provides a mechanism for criminal defendants to challenge their convictions or sentences based on a substantial violation of their rights under the federal or state constitutions." *People v. Morris*, 236 Ill. 2d 345, 354 (2010). The Act contemplates the filing of a single postconviction petition. *People v. Edwards*, 2012 IL 111711, ¶ 22. Accordingly, a defendant seeking to initiate a successive postconviction petition must first obtain leave of court. *People v. Tidwell*, 236 Ill. 2d 150, 157 (2010).

¶ 25    The bar to successive postconviction proceedings will be relaxed only where the petitioner demonstrates (1) "cause and prejudice" for the failure to raise the claim in an earlier proceeding,

or (2) actual innocence under the "fundamental miscarriage of justice" exception. *Edwards*, 2012 IL 111711, ¶ 22-23; *People v. Smith*, 2014 IL 115946, ¶ 30.

¶ 26   Under the cause-and-prejudice test, a defendant must establish both (1) cause for the failure to raise the claim in an earlier proceeding and (2) prejudice resulting from that failure. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)). The cause-and-prejudice standard imposes a higher burden than the "frivolous or patently without merit" standard applied in initial postconviction proceedings. *Id.* ¶¶ 25-29; *Smith*, 2014 IL 115946, ¶ 35 ("the cause-and-prejudice" test for a successive petition "involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act").

¶ 27   Cause is demonstrated by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2010). To establish prejudice, a petitioner must show the claimed error so infected the proceedings the resulting conviction or sentence constituted a denial of due process. *People v. Wrice*, 2012 IL 111860, ¶ 48. The burden rests on the petitioner to make a *prima facie* showing of both cause and prejudice to obtain leave before further proceedings on his claims. *People v. Bailey*, 2017 IL 121450, ¶ 24.

¶ 28   All well-pleaded facts set forth in the petition, together with any supporting documentation, must be construed liberally in favor of the defendant. *People v. Robinson*, 2020 IL 123849, ¶ 44. The parties' prior arguments, and any forfeiture of those arguments, operates as a limitation on the parties and not this court. *People v. Ratliff*, 2024 IL 129356, ¶ 26. Whether a petitioner's pleadings satisfy the cause-and-prejudice test for leave to file a successive petition is a question we review *de novo*. *Pitsonbarger*, 205 Ill. 2d at 456.

¶ 29    The proportionate penalties clause (Clause) states: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The Clause adds a limitation on penalties beyond those provided by the eighth amendment of the United States Constitution and adds the objective of restoring offenders to useful citizenship. *People v. Clemons*, 2012 IL 107821, ¶ 39.

¶ 30    Illinois courts have recognized that young adult offenders may raise proportionate penalties challenges based on evolving research concerning youth and brain development. See *People v. Spencer*, 2025 IL 130015, ¶ 37, where our supreme court stated: "this court has not barred young adult defendants from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science regarding juvenile maturity and brain development." *People v. Clark*, 2023 IL 127273, ¶ 87 (19-year-old defendant sentenced to a term of natural life in prison (citing *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44))). Further, in *People v. Harris*, 2018 IL 121932, the Illinois Supreme Court held that a defendant who was 18 years and 3 months old at the time of the offense could pursue an as-applied challenge to his sentence under the proportionate penalties clause in postconviction proceedings where an adequate factual record could be developed. Similarly, in *People v. House*, 2021 IL 125124, the court acknowledged that a young adult offender may raise an as-applied proportionate penalties claim where the circumstances of the offender's youth and development are demonstrated through an evidentiary record.

¶ 31    This court has also, in limited circumstances, allowed successive petitions raising emerging adult claims to proceed where the defendant presented new individualized evidence regarding youth-related characteristics. See *People v. Minniefield*, 2020 IL App (1st) 170541. There, the defendant, who was 19 years old at the time of the offense and received a 50 year *de facto* life sentence, was permitted to proceed with a successive petition after presenting evidence concerning

9

his youth and neurological development that had not previously been considered. Nevertheless, *Minniefield*, *House*, and *Harris* do not relieve a defendant seeking to file a successive petition from satisfying the cause-and-prejudice test. See *People v. Dorsey*, 2021 IL 123010, ¶ 73 (Illinois courts have recognized youth as a mitigating factor long before *Miller*).

¶ 32    A constitutional challenge to a statute may be facial or as-applied. *Harris*, 2018 IL 121932, ¶ 38. An as-applied challenge depends on particular facts and circumstances of the challenging party and must overcome the presumption the statute is constitutional by clearly demonstrating the statute is invalid as applied to him. *Id.* See *House*, 2021 IL 125124, ¶ 18 (to overcome presumption the statute is constitutional, the challenging person must establish the statute is invalid as applied to that person).

¶ 33    Our supreme court has recognized that young adult offenders may raise as-applied challenges under the proportionate penalties clause where a defendant receives a mandatory life sentence and an adequate factual record can be developed. Cases like *Spencer*, *Harris*, and *House* reflect this principle because "the record needed to be sufficiently developed in the circuit court through an evidentiary hearing and findings of fact to review the defendant's constitutional claim." *Spencer*, 2025 IL 130015, ¶ 44; *Dorsey*, 2021 IL 123010, ¶ 87. Cases like *People v. Hilliard*, 2023 IL 128186, do not foreclose proportionate penalty challenges in circumstances where the sentencing court lacked any ability to account for youth because our supreme court has stated that "this court has not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development." *Clark*, 2023 IL 127273, ¶ 87. We stated that "those cases addressed the possibility of a defendant raising a *Miller*-based challenge with respect to mandatory life sentences in initial postconviction petitions." *Id.* ¶ 88.

¶ 34    There is a material distinction between our analysis and the dissent's view—Conwell was sentenced under a mandatory sentencing scheme that precluded consideration of youth and attendant circumstances. "Mandatory-life-sentencing statutes are constitutionally flawed, according to *Miller*, because they remove consideration of youth from the determination of whether to impose the harshest sentence and pose too great a risk of disproportionate punishment. [Citation.] But *Miller* did not foreclose the possibility of discretionary life sentences for juvenile homicide offenders." *Dorsey*, 2021 IL 123010, ¶ 38. "Instead, the [*Miller*] Court mandated a 'certain process—considering an offender's youth and attendant characteristics' before a trial court may impose such a sentence." *People v. Lusby*, 2020 IL 124046, ¶ 33 (quoting *Miller*, 567 U.S. at 483).

¶ 35    In *Miller*, the United States Supreme Court held the eighth amendment requires sentencing courts to exercise its discretion when imposing sentences on juvenile offenders and to consider the offender's youth and its attendant characteristics. *People v. Barbosa*, 2024 IL App (1st) 221173-U, ¶ 18 (citing *Clark*, 2023 IL 127273, ¶ 54). The Court explained that juveniles possess diminished culpability and greater prospects for reform and are therefore less deserving of the most severe punishments. *Miller*, 567 U.S. at 471. In Illinois, our supreme court expanded *Miller* so that *de facto* life sentences, prison sentences exceeding 40 years, are included. *Barbosa*, 2024 IL App (1st) 221173-U, ¶ 19; see *People v. Buffer*, 2019 IL 122327, ¶ 41.

¶ 36    Also, our supreme court further clarified that *Miller* addressed mandatory life sentences where the sentencing court lacked discretion to consider a juvenile offender's youth before imposing the harshest sentence available. *Clark*, 2023 IL 127273, ¶ 71. Accordingly, *Miller* is inapplicable to cases involving discretionary life sentences where the sentencing court retains the ability to consider the offender's youth and attendant characteristics. *Id.*

¶ 37    We respectfully disagree with the dissent because unlike *Dorsey*, *Clark*, and *Moore*, where the sentencing court retained the ability to consider youth and impose lesser penalties, the sentencing court here had no such option. As reflected in the record, the circuit court expressly acknowledged it was "precluded by law" from imposing a term-of-years sentence. Where a court is structurally barred from considering youth and its attendant characteristics in any meaningful way, the rationale underlying *Dorsey*, *Clark*, and *Moore* will not control. Those decisions did not involve a sentencing court that lacked authority to impose less than natural life, a limitation the circuit court here later acknowledged on the record.

¶ 38    The dissent relies on several appellate decisions, including unpublished ones, to "confirm" what our supreme court precedent means. But those rulings are interpretations and not controlling law. The decisions also involved discretionary sentences or addressed the general availability of youth claims. None held that mandatory and discretionary life sentences are the same for purposes of the "cause and prejudice" test. Moreover, as appellate rulings, they cannot overrule the decisions of our supreme court. To the extent they can be read to erase our supreme court's distinction between a sentence imposed with discretion and one imposed without it, we decline to follow them.

¶ 39    We agree that an emerging adult who challenges a mandatory life sentence could not "[c]laim to expand *Miller*," as the dissent charges. *Infra* ¶ 68. Rather, in *Miller*'s wake, what evolved was our understanding of the proportionate penalties clause. See, *e.g.*, *People v. Taylor*, 102 Ill. 2d 201, 206, 209 (1984) (concluding, before *Miller*, that legislature considered possible rehabilitation of juveniles when imposing mandatory minimum sentence of natural life imprisonment for murdering more than one person). For the first time, the Illinois Supreme Court recognized in cases like *Thompson*, *Harris*, and *House* that an emerging adult may challenge his

mandatory life sentence under the proportionate penalties clause if he can demonstrate he is akin to a juvenile.

¶ 40    Before *Miller*, Illinois courts routinely rejected emerging adults' challenges under the proportionate penalties clause to mandatory life terms. See, *e.g.*, *People v. Griffin*, 368 Ill. App. 3d 369, 378-79 (2006) (rejecting 17-year-old's challenge to mandatory life sentence, noting he was not a juvenile under Illinois law at that time and holding that "[t]he narrow rule articulated in [*Leon*] *Miller* does not apply" because it "limited its holding to juvenile defendants"); *People v. Winters*, 349 Ill. App. 3d 747, 750-51 (2004) (rejecting 18-year-old's challenge to mandatory life sentence and holding that, "[d]espite defendant's attempts to characterize the [*Leon*] *Miller* holding as applicable to 'young' adult defendants, the [*Leon*] *Miller* court clearly indicated that its holding applied only to juvenile defendants"); *People v. McCoy*, 337 Ill. App. 3d 518, 521-25 (2003) (same holding when rejecting 19-year-old's challenge to mandatory life sentence).

¶ 41    As *Thompson*, *Harris*, *House*, and *Moore* recognized, *Miller* enabled emerging adults to raise proportionate-penalties challenges to mandatory life sentences that previously had not been viable.

¶ 42    At the time of Conwell's sentencing, the statutory scheme effectively limited the sentencing court to either the death penalty or natural life imprisonment. As Judge Linn later explained, he was "precluded by law" from imposing a term-of-years sentence. Because the court lacked authority to impose a lesser sentence, it could not give meaningful effect to youth-related mitigation. Under those circumstances, Conwell did not have a meaningful opportunity to raise the claim he now asserts.

¶ 43    "The Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences." *Hilliard*, 2023 IL 128186, ¶ 29. Conwell contends his

13

successive postconviction petition should proceed because he presented individualized evidence concerning his psychological history and developmental background, including records reflecting prior mental health diagnoses, cognitive limitations, and educational difficulties. The dissent faults this evidence because some of it predates the offenses. But the question is not whether the records are recent but whether they shed light on Conwell's developmental and cognitive functioning at the time he committed the offenses. At this stage, they do. Unlike a generalized claim based solely on evolving legal principles, the claim here is supported by specific documentation, including psychological evaluations and developmental records, that bear directly on Conwell's culpability and capacity at the time of the offenses. Additionally, his documented psychological conditions and cognitive limitations further support the conclusion that his ability to meaningfully raise this claim in earlier proceedings was impeded.

¶ 44    Notably, Conwell was only one month past his eighteenth birthday at the time of the offenses, placing him at the threshold of legal adulthood. This proximity to juvenile status further establishes the relevance of evolving considerations of youth and development and supports Conwell's contention that his culpability must be assessed considering characteristics traditionally associated with juvenile offenders. Because an as-applied proportionate penalties challenge depends on the particular facts and circumstances of the individual defendant, such a claim could not have been meaningfully raised without a sufficiently developed record. See *Harris*, 2018 IL 121932, ¶ 48; *House*, 2021 IL 125124, ¶ 31. Under these circumstances, the absence of both (i) a developed factual record and (ii) a legal framework recognizing how youth-related characteristics apply to emerging adults operated as impediments to raising this claim earlier. The dissent is correct that the age of 18 marks the line for juvenile eighth amendment protection. But Conwell is not bringing an eighth amendment juvenile-sentencing claim. He raises an as-applied claim under

14

the Illinois proportionate penalties clause, which requires a more individualized inquiry and consideration of youth.

¶ 45    The State relies on *Dorsey* and argues that Conwell cannot establish cause because youth-based sentencing claims were available prior to *Miller*. However, we do not read *Dorsey* as imposing a bar to establishing cause in all emerging-adult proportionate penalties claims. Rather, *Dorsey* reaffirmed that youth has long been a mitigating factor; it did not address circumstances in which a defendant's claim depends on individualized evidence and factual development not previously presented. See *Dorsey*, 2021 IL 123010, ¶ 73. Indeed, our supreme court has made clear that as-applied challenges of this nature are better suited for postconviction proceedings where a sufficient record can be developed. *Harris*, 2018 IL 121932, ¶ 31.

¶ 46    We find that the existence of prior psychological evidence does not defeat cause. The relevant inquiry is not whether records physically existed but whether their constitutional significance as evidence of diminished emerging-adult culpability could have been meaningfully recognized and litigated at the time. Here, it could not. At the time of Conwell's 2002 postconviction proceedings, there was no developed legal pathway for an emerging adult to raise an as-applied proportionate penalties claim grounded in youth-related characteristics, particularly where the sentence was mandatory. Thus, contrary to the dissent's reasoning, "having the tools" is not the test but, rather, whether Conwell had a meaningful opportunity to present the claim he now raises. Under the sentencing structure then in place, and without a developed framework for emerging-adult proportionate penalties claims grounded in youth-related science and individualized mitigation, he did not. In *Dorsey*, the sentencing court had discretion to consider youth and impose a lesser penalty. The same is true in *Clark* and *Moore*. In contrast, the sentencing court lacked authority to do so, bearing directly on whether youth could be meaningfully

15

considered in the first place. In recent years, developments in neuroscience and psychology have increasingly shown that late adolescents and young adults share key characteristics with juveniles, including diminished impulse control, heightened susceptibility to peer influence, and an underdeveloped capacity for risk assessment. These developments inform the evolving standards reflected in our proportionate penalties clause and underscore the need for individualized sentencing determinations whether youth is meaningfully considered. The dissent asserts "all relevant facts Conwell provide[d] in support of his petition *** were available when he filed his initial postconviction petition in 2002" (*infra* ¶ 74), but the record reflects otherwise. We find indisputably novel scientific considerations matter because Conwell was barely over 18 at the time of the offenses and a mandatory life term left no room to decide whether his conduct reflected permanent incorrigibility or the immaturity of youth.

¶ 47    The record further reflects the circuit court found mitigating evidence sufficient to preclude the imposition of the death penalty but nevertheless imposed a sentence of natural life imprisonment as the only remaining available option. Thus, although the court considered Conwell's youth and mitigating characteristics, it lacked the ability to give meaningful effect to those considerations by imposing a sentence other than life in prison. See *Buffer*, 2019 IL 122327, ¶ 41. Judge Linn confirmed this years later, adding that under the current law, the analysis would be different. These statements reflect the legal constraints at the time of sentencing and underscore that Conwell's youth and mitigating circumstances could not have been meaningfully applied.

¶ 48    The proportionate penalties clause itself embodies this evolving standard, requiring that penalties be determined not only according to the seriousness of the offense but also with the objective of restoring the offender to useful citizenship. Ill. Const. 1970, art. I, § 11; see *Clemons*,

16

2012 IL 107821 ¶ 39. Where contemporary understanding of youth and development has progressed, our application of constitutional principles must remain responsive to those changes.

¶ 49   The cause-and-prejudice test is grounded in principles of fundamental fairness and the integrity of judicial proceedings. *Pitsonbarger*, 205 Ill. 2d at 459. Applying that standard here, where Conwell received a mandatory life sentence and the sentencing court lacked authority to impose a lesser term, dismissal would foreclose review of a claim that Illinois law does not prohibit and that this record materially supports.

¶ 50   We do not expand *Miller*, invalidate Conwell's sentence, or hold the sentence unconstitutional. We hold only that Conwell made a sufficient *prima facie* showing to proceed with further factual development of his as-applied proportionate penalties claim. The Act does not preclude a prisoner such as Conwell from raising his claim at this stage of the proceedings.

¶ 51                                    IV. CONCLUSION

¶ 52   We reverse the judgment of the circuit court dismissing Conwell's successive postconviction petition and remand for further proceedings consistent with this opinion.

¶ 53   Reversed and remanded.

¶ 54   JUSTICE HYMAN, specially concurring:

¶ 55   Illinois law accepts that cognitive and emotional maturity does not abruptly end on an eighteenth birthday. Judgment, impulse control, and decision-making continue to form into the early twenties. Had Conwell, who was barely 18 at the time of the offense, filed his first postconviction petition today, the Act would not bar litigation of his proportionate penalties claim.

¶ 56   But Conwell filed his first postconviction petition in 2002. This case instead concerns whether subsequent advances in constitutional law and the scientific understanding concerning late adolescent and emerging-adult brain development may still permit litigation of his claim. The

17

dissent concludes the law bars him from doing so. Left unexplained, however, is how Conwell reasonably could have been expected to raise claims grounded in legal principles and concepts that had not yet gained recognition.

¶ 57    Marshan Allen's postconviction proceedings illustrate why courts should hesitate before limiting opportunities for further postconviction review by emerging adults.

¶ 58    At 15 years old, Marshan Allen faced a future he could scarcely understand. The law saw participation in a terrible crime but not the immature mind behind it. Because Illinois's accountability law permitted prosecutors to charge Allen with murder even though he did not pull the trigger, he was convicted and sentenced to mandatory life without parole. Inside prison, Allen eventually began teaching himself the law. Older prisoners helped him learn legal research. His family pooled money to buy him a typewriter. He spent countless hours in the law library studying his case and helping others with theirs.

¶ 59    At the time of Allen's sentencing, courts had not reflected the developmental differences between adolescents and mature offenders in constitutional sentencing analysis. As Allen's case unfolded, that understanding evolved. In time, federal and Illinois decisions altered the legal framework that once foreclosed relief. Ultimately, Allen secured his release after serving nearly 25 years in prison. See *People v. Allen*, 2013 IL App (1st) 102884-U, ¶ 1.

¶ 60    But his story does not end there. Allen, now a law school graduate, works for an organization that helps incarcerated individuals navigate the legal system. His journey demonstrates why postconviction review must remain meaningfully available for crimes committed while judgment and character remain unsettled. Allen later observed, " 'Don't forget. We're human beings and we make mistakes and we become better people. I'm not the exception.' " Robb Stafford & Lisa Capitanini, *Race in Chicago: One Man's Fight for Redemption*, NBC Chicago (Sept. 3, 2020),

https://www.nbcchicago.com/news/race-in-chicago-one-mans-fight-for-redemption/2333295/ [https://perma.cc/U52U-LNFR].

¶ 61    The Illinois Constitution entrusts courts with ensuring that petitioners like Conwell are not relegated to "a proverbial no-man's land." See *People v. Horshaw*, 2024 IL App (1st) 182047-B, ¶ 61. Leaving open a path to postconviction relief for emerging adults does not excuse the gravity of the offense or the suffering inflicted on the victims' families. Indeed, Allen has never minimized the loss of two lives.

¶ 62    Nonetheless, courts should take account of the capacity for change and rehabilitation no less than they account for the suffering caused by the underlying crime. Consider the admonition of Judge A. Leon Higginbotham, Jr. (1928-1998), a recipient of the Presidential Medal of Freedom and revered member of the United States Circuit Court of Appeals for the Third Circuit. Judge Higginbotham once said, " '[A]lways attempt to see those human beings who become invisible to most people, and that [way] you always try to hear the pleas of those persons who, despite their pain and suffering, have become voiceless and forgotten.' " William Glaberson, *A. Leon Higginbotham, Jr., Federal Judge, Is Dead at 70*, New York Times (Dec. 15, 1998), https://www.nytimes.com/1998/12/15/us/a-leon-higginbotham-jr-federal-judge-is-dead-at-70.html [https://perma.cc/M3N5-TXDV].

¶ 63    Judge Higginbotham's words remind us not to lose sight of the humanity of those asking to be heard. At this stage, it is enough to conclude that, like Marshan Allen before him, Conwell should receive the opportunity to present and pursue his as-applied claim under the proportionate penalties clause.

¶ 64    PRESIDING JUSTICE C.A. Walker joins in this special concurrence.

¶ 65    JUSTICE GAMRATH, dissenting:

¶ 66    If this were Conwell's initial postconviction petition, I would concur with my distinguished colleagues. But because it is not, I respectfully dissent.

¶ 67    While fundamental fairness is critical, adherence to the law is equally essential. As established by the Illinois Supreme Court in *Dorsey*, *Clark*, and *Moore*, we should affirm the dismissal of Conwell's successive postconviction petition because he cannot demonstrate cause for not raising his *Miller*-based proportionate penalties claim earlier. See *People v. Dorsey*, 2021 IL 123010, ¶ 74 (*Miller* does not provide cause to raise a claim under the proportionate penalties clause); *People v. Clark*, 2023 IL 127273, ¶ 94 ("the *Miller* line of cases does not satisfy the 'cause' prong of the cause-and-prejudice test for raising a proportionate penalties claim in a successive postconviction petition"); *People v. Moore*, 2023 IL 126461, ¶ 40 (*Miller* "does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause" in a successive petition); see also *People v. Leach*, 2024 IL App (4th) 230298, ¶ 88 ("The supreme court recently reaffirmed its holdings in both *Dorsey* and *Moore* in *People v. Hilliard*, 2023 IL 128186, ¶ 28, in which the supreme court affirmed the summary dismissal of the 18-year-old defendant's *Miller*-based as-applied proportionate penalties claim.").

¶ 68    The majority asserts that Conwell's situation is unique because he was just barely 18 when the crimes occurred and he received a mandatory natural life sentence that precluded consideration of youth and attendant circumstances. I disagree. Claims to expand *Miller* to offenders who are 18 or older have consistently been denied, with the supreme court explicitly stating that *Miller* applies only to juveniles, not to 18-year-olds like Conwell. *People v. Spencer*, 2025 IL 130015, ¶ 32; *People v. Harris*, 2018 IL 121932, ¶ 61.

¶ 69    Additionally, even under a mandatory sentencing scheme, Conwell could have made a proportionate penalties claim in his initial postconviction petition by arguing his youth and attendant circumstances made his natural life sentence cruel, degrading, or so wholly disproportionate to the crime as to shock the moral sense of the community. See *Spencer*, 2025 IL 130015, ¶ 42 (article I, section 11, of the Illinois Constitution provides a check on the judiciary to impose a sentence below the statutory minimum when unconstitutional as applied); *People v. Leon Miller*, 202 Ill. 2d 328, 341-43 (2002) (supreme court upheld a sentence below the mandatory minimum where the mandatory minimum violated the proportionate penalties clause). If a life sentence is "cruel, degrading, or so wholly disproportionate to the crime as to shock the moral sense of the community" (*Leon Miller*, 202 Ill. 2d at 338), "the proportionate penalties clause does not care if the life sentence was mandatory or discretionary under statutory law: in either case, the clause is offended. The proportionate penalties clause is concerned only with the result: the punishment, the sentence." *People v. Masters*, 2024 IL App (4th) 230370, ¶ 57.

¶ 70    Furthermore, recent Illinois case law uniformly shows that *Dorsey*, *Clark*, and *Moore* apply to claims involving both discretionary and mandatory life sentences and do not provide cause for failing to raise a proportionate penalties claim sooner. Contrary to the majority's claim, several appellate decisions involving mandatory sentences have in fact determined there is no difference between mandatory and discretionary sentences for purposes of the cause and prejudice test. These rulings do not attempt to overturn supreme court precedent; they carefully and thoroughly apply it.

¶ 71    *People v. Malone*, 2025 IL App (1st) 231881-U, ¶ 16, which is a mandatory natural life sentence case, states it best:

21

"As this court noted, 'nothing in *Moore* suggested a distinction between discretionary and mandatory sentences.' *People v. Leach*, 2024 IL App (4th) 230298, ¶ 86. Rather, the court observed, 'As *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause.' *Moore*, 2023 IL 126461, ¶ 40. We cannot read an exception for defendants who received mandatory sentences into the court's clear statement."

¶ 72    In addition to *Malone*, directly on point are the mandatory-sentencing cases of *People v. Berry*, 2026 IL App (1st) 241478-UB, *People v. Boclair*, 2025 IL App (1st) 240911-U, *People v. McGee*, 2025 IL App (1st) 231591-U, *petition for leave to appeal allowed*, No. 131880 (Ill. Sept. 24, 2025), *People v. Johnson*, 2025 IL App (5th) 230646-U, and *People v. Ornelas*, 2025 IL App (1st) 220625-U. In each instance, the appellate court affirmed the trial court's dismissal or denial of leave to file a successive postconviction petition where the young-adult defendant failed to raise, in his initial postconviction petition, the claim that his mandatory life sentence violates the proportionate penalties clause. Citing *People v. Horshaw*, 2024 IL App (1st) 182047-B, every case found no relevant distinction between young adults receiving mandatory or discretionary sentences, noting that for decades defendants have been able to challenge sentences based on age or maturity. Thus, they had the essential legal tools all along to raise a *Miller*-based proportionate penalties claim in their initial postconviction petitions. See also *People v. Hartsfield*, 2025 IL App (1st) 232389-U, ¶ 44; *People v. Merriweather*, 2023 IL App (1st) 220440-U, ¶ 21; *People v. Carter*, 2023 IL App (1st) 220491-U, ¶ 21; *People v. Chavez*, 2025 IL App (1st) 231823-U, ¶ 16; *Leach*, 2024 IL App (4th) 230298, ¶ 86; *People v. Vega*, 2023 IL App (1st) 200663-UB, ¶¶ 14, 54 (all holding that *Dorsey*, *Clark*, and *Moore* preclude young adults like Conwell from using *Miller-*

based claims as cause for successive postconviction petitions on proportionate penalties grounds, regardless of whether the sentence is mandatory or discretionary).

¶ 73    The only exception among these cases is *People v. Minniefield*, 2020 IL App (1st) 170541, cited by the majority. However, *Minniefield*'s validity is doubtful after the supreme court labeled it "infirm," largely because *Minniefield* was decided during the early phase of *Miller*-related claims and before the supreme court clarified cause for successive postconviction petitions in *Dorsey*, *Clark*, and *Moore*. See *Hilliard*, 2023 IL 128186, ¶ 28.

¶ 74    The majority maintains that " 'having the tools' " is not the test, asserting that Conwell lacked a meaningful opportunity to raise the claim sooner. *Supra* ¶ 46. But all relevant facts Conwell provides in support of his petition, as well as the legal principles embodied in the proportionate penalties clause, were available when he filed his initial postconviction petition in 2002. His psychological and developmental documentation dates to 1993 and does not show how his intellectual traits resembled those of a juvenile nor how this affects whether his sentence for shooting and killing two unarmed individuals and injuring four others violates the proportionate penalties clause. Because Conwell had access to these facts and legal tools throughout, he cannot show cause for not making a proportionate penalties claim initially. See *Moore*, 2023 IL 126461, ¶ 42 (defendant "had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause when he filed his previous postconviction petitions" (internal quotation marks omitted)).

¶ 75    In summary, I find no reason to depart from the consistent rulings of the First, Fourth, and Fifth Districts, which have concluded that young-adult offenders like Conwell cannot demonstrate cause for a *Miller*-based proportionate penalties claim through a successive postconviction petition, irrespective of whether their sentence is discretionary or mandatory. Although the

23

outcome of the pending *McGee* appeal or future legislative developments could change the legal framework, based on current Illinois law, I would affirm the dismissal of Conwell's successive postconviction petition. For these reasons, I respectfully dissent.

*People v. Conwell*, 2026 IL App (1st) 240714

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 97-CR-15419; the Hon. James B. Novy, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Alison L. S. Shah, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Eileen O'Neill Burke, State's Attorney, of Chicago (John E. Nowak, Daniel Piwowarczyk, and Lynnette Cusack, Assistant State's Attorneys, of counsel), for the People. |